```
                    UNITED STATES DISTRICT COURT

                    EASTERN DISTRICT OF NEW YORK

 UNITED STATES OF AMERICA,     .   Docket No.
                               .   1:23-CR-00278-NRM-2
      Government,              .
                               .
          v.                   .   Brooklyn, New York
                               .   Monday, July 10, 2023
 ABU CHOWDHURY, ET AL.,        .   4:09 p.m.
                               .
      Defendant.               .
 . . . . . . . . . . . . . . . .


                     TRANSCRIPT OF ARRAIGNMENT
              BEFORE THE HONORABLE CHERYL L. POLLAK
                  UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:        U.S. Attorney's Office
                           Eastern District of New York
                           STEPHANIE PAK, AUSA
                           271-A Cadman Plaza East
                           Brooklyn, New York  90012
                           718-254-6187

For the Defendant:         Sher Tremonte
                           NOAM BIALE, ESQ.
                           BRACHAH GOYKADOSH, ESQ.
                           90 Broad Street
                           23rd Floor
                           New York, New York  10004
                           212-202-2600

Also Present:              Iffat Lubna, Defendant
                           Nina Shah, Interpreter

Transcription Service:     Superior Reporting Services LLC
                              P.O. Box 5032
                              Maryville, TN 37802
                              865-344-3150


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

```
 1                    P R O C E E D I N G S
 2            THE CLERK:  For arraignment, Case Number 23-CR-278,
 3   United States vs. Iffat Lubna.
 4            Counsel, starting with the Government, please state
 5   your appearances.
 6            MS. PAK:  Oh behalf of the Government, Stephanie
 7   Pak.  Good afternoon again, Your Honor.
 8            THE COURT:  Good afternoon.
 9            MR. BIALE:  Good afternoon, Your Honor.  Noam Biale
10   and Brachah Goykadosh on behalf of Ms. Lubna, who's here to
11   my right.
12            THE COURT:  Good afternoon.
13            Felix, do you want to swear in the interpreter for
14   me, please?
15            THE CLERK:  Also present is Bengali interpreter
16   Nina Shah (ph.).  Please raise your right hand.
17        (Interpreter sworn)
18            THE COURT:  All right.  Good afternoon, Ms. Lubna.
19   All right.  You may stay seated.  That's fine.
20            The purpose of this proceeding is to make sure you
21   understand the crime you've been charged with, to make sure
22   you understand that you have the right to be represented by
23   an attorney, and to decide whether you should be released on
24   bail or held in jail until your trial on these charges.  You
25   don't have to say anything here today.  If you start to say
```

1  something, you can stop at any time.  But what you must
2  understand is that anything you do say, except what you say
3  to Mr. Biale, your attorney, anything else can be used
4  against you.  Do you understand that?
5            THE DEFENDANT:  Yes.
6            THE COURT:  Okay.  Have you seen a copy of the
7  indictment?  Yes?  You have to answer me orally because we're
8  recording this.
9            THE DEFENDANT:  Yes.
10           THE COURT:  Okay.  You're charged with on or about
11 May 11th, 2023, within the Eastern District of New York and
12 elsewhere that you, together with others, did knowingly and
13 intentionally kidnap and hold for ransom a person whose
14 identity was known to the grand jury, and that you used one
15 or more means, facilities, and instrumentalities of
16 interstate and foreign commerce, specifically cellular
17 telephones and the internet --
18           MR. BIALE:  If I could have a moment, Your Honor?
19           THE COURT:  -- to commit the crimes.  This is what
20 is charged in the indictment.  Do you understand what you
21 have been charged with?
22           THE DEFENDANT:  Yes.
23           THE COURT:  Okay.  Counsel, do you have any concern
24 about whether or not she understands the charge?
25           MR. BIALE:  No, Your Honor.  I reviewed it with her

1    and then reviewed it a second time with the aid of the
2    interpreter, and I believe she understands the charge.
3            THE COURT:  Okay.  All right.  And is she prepared
4    to enter a plea at this time?
5            MR. BIALE:  Yes, Your Honor.  On her behalf, I will
6    enter a plea of not guilty.
7            THE COURT:  All right.  And what is the
8    Government's position with respect to bail for Ms. Lubna?
9            MS. PAK:  Your Honor, the people -- the Government,
10   rather, is seeking detention for Defendant Lubna as well.
11           THE COURT:  And can you --
12           MS. PAK:  Your Honor --
13           THE COURT:  -- can you please give me some basis
14   for that?
15           MS. PAK:  Yes, Your Honor.  Your Honor, the
16   people -- the Government believes that Defendant Lubna is
17   also a danger to the community, and that there's a
18   significant risk of flight, and that no other combination of
19   conditions would secure her appearance or keep the community
20   safe.
21           Your Honor, this defendant's role in the kidnapping
22   that is alleged in the indictment is a very active and
23   willing one.  This defendant --
24           THE COURT:  I'm sorry.  You're going to have to
25   slow down because I want to make sure that the interpreter

1  can translate.
2          MS. PAK:  Yes, Your Honor.
3          THE COURT:  Okay.  So pause after every sentence if
4  that's possible.
5          MS. PAK:  Yes.
6          THE COURT:  Go ahead.
7          MS. PAK:  This defendant lured the victim to the
8  location of the abduction, agreeing to meet with the victim
9  at a specific time and date.  Not only did she lure the
10 victim to the location, she was also waiting inside the
11 minivan that pulled up that the victim was shoved into.  I'd
12 also point out, Your Honor, that while the victim was
13 brutally assaulted, this victim also participated --
14         THE COURT:  Defendant.
15         MS. PAK:  This -- sorry, this defendant, also
16 participated actively again in beating the victim with a rod.
17 At no point during the two days that this victim was
18 tortured, sodomized, brutally beaten did this victim seek
19 to -- did this defendant seem to extricate herself.  At no
20 point did she seek to obtain assistance from the authorities.
21 She was there until the very end.
22         Your Honor, I also spoke previously as to two
23 incidents in which the co-defendant, Defendant Chowdhury, had
24 had interactions with NYPD.  And in those interactions, I
25 have explained how Defendant Chowdhury sought to disobey

1  orders from law enforcement, sought to avoid identifying
2  himself, and what I would add is that in each of these
3  instances, this Defendant Lubna was not only present, but she
4  was actively assisting Defendant Chowdhury in thwarting law
5  enforcement's awful attempts.  She was there to make sure
6  that the police couldn't take Chowdhury's phone when he was
7  arrested.  And when Chowdhury had been pulled over, she got
8  out of the car and tried to get Chowdhury's phones back from
9  the officer on-scene.
10             Your Honor, I'd also point out that this defendant
11 has no ties to the community.  Her only tie to the community
12 is to her co-defendant, Mr. Chowdhury.  I would note that per
13 the Pretrial Services report, that they do not recommend
14 release under any conditions for this defendant as well.  The
15 information that is provided has been uncorroborated.
16             So in sum, Your Honor, given this defendant's
17 active role in this brutal crime, as well as her lack of any
18 ties to the community, she is both a flight risk, and a
19 danger to the community that no conditions can account for.
20             THE COURT:  All right.  Thank you, Counsel.
21             Mr. Biale?
22             MR. BIALE:  Thank you, Your Honor.
23             THE COURT:  Again, I'm going to ask you to speak
24 slowly so your client --
25             MR. BIALE:  I know.  I now have a little bit more

1  experience speaking with Ms. Lubna with the aid of the
2  interpreter.
3              So first of all, Your Honor, I would just point out
4  that under the Bail Reform Act, the Government cannot proceed
5  to a detention hearing unless they prove that Ms. Lubna is a
6  significant risk of flight.  So consideration of
7  dangerousness is premature at this point.
8              Nonetheless, on the particular circumstances here,
9  I submit, Your Honor, that Ms. Lubna is neither a significant
10 risk of flight or any risk of flight that cannot be mitigated
11 by conditions, nor is she a danger to the community.  Ms.
12 Lubna is 23 years old.  She came here a year and a half ago
13 from her native Bangladesh on a student visa.  She has been
14 studying English as a second language through both online and
15 in-person classes.  This September, she will have the
16 opportunity to begin to focus on her major, which is computer
17 science.
18             This opportunity is Ms. Lubna's great chance at her
19 life for a better future, and she would not throw it away
20 lightly.  In addition, Ms. Lubna is pregnant.  She is now
21 approximately eight or nine weeks along.  She has a high-risk
22 pregnancy because of ovarian cysts that have been found
23 during her prenatal care.  Her doctors have advised that she
24 has a high risk of miscarriage.  And in addition, she's had,
25 for the last several weeks, debilitating morning sickness.

1   She has a July 26th appointment with her doctor that it's
2   very important that she attend.
3              I will return to this in a moment because I think
4   that for reasons that the Court is very familiar with, the
5   MDC is simply not a place that can take care of a person in
6   Ms. Lubna's current situation, and I think that factor
7   significantly weighs in favor of release.  But let me first
8   address the Government's presentation.
9              The nature of the allegations here are no doubt
10  serious, but I think it is without question that Ms. Lubna
11  played a subordinate role.  And while the Government has
12  advised that she struck the victim, she did not, as far as I
13  understand, participate in any of the worst facts that the
14  Government alleges occurred during those two days.  There is
15  a significant backstory here in terms of the relationship
16  between Ms. Lubna and the victim.
17             Obviously, I'm new to the case and I do not have
18  access yet to the Government's evidence, but I think it
19  suffices to say that the victim is not a savory or
20  trustworthy person.  Ms. Lubna has no prior criminal record.
21  She has never been in any kind of trouble in her life.  The
22  NYPD interactions that the Government describe again involve
23  Ms. Lubna as a subordinate figure to her fiance.
24             Now, of course, the Government may proceed by
25  proffer at this point in terms of their evidence, but the

1  court is also instructed under the Bail Reform Act to
2  consider the presumption of innocence.  Ms. Lubna vehemently
3  denies these allegations, and she voluntarily provided her
4  passcode to the agents for her phone because she had nothing
5  to hide.  She will show up for court.  She has every reason
6  to do so, and we are -- we have one surety who is committed
7  who is working to get additional sureties and to put up some
8  amount of cash, which although it's not going to be a very
9  substantial amount, will be, for these individuals, a
10 significant deterrent for Ms. Lubna to flee.
11          So we think that this bail package does assure her
12 return to court and the safety of the community.  The Court
13 can impose restrictions such as home detention and electronic
14 monitoring to ensure that she remains at her residence.  And
15 I do not think that there is any allegation here that
16 suggests, even assuming the allegations to be true, that Ms.
17 Lubna presents any danger to anyone in the absence of Mr.
18 Chowdhury.
19          Finally, Your Honor, to return to the conditions of
20 the MDC, as I know Your Honor is very familiar, the
21 conditions, especially in the women's facility, are nothing
22 short of inhumane.  Particularly with respect to medical
23 care, the MDC has time again fallen down on its
24 responsibilities.  I have a client in another case currently
25 who the MDC has failed to bring to regular ophthalmology

1    appointments.  And as a result of their negligence, my client
2    is blind.
3         Given Ms. Lubna's high-risk pregnancy and the
4    particular needs she has to be under the care of her doctor,
5    to send her to the MDC is simply too risky and must be
6    weighed heavily in the Court's consideration of the bail
7    question.
8         THE COURT:  Thank you.
9         Did you want to respond or have anything?
10        MS. PAK:  Yes, Your Honor.  Briefly, if I may.
11        THE COURT:  Slowly.
12        MS. PAK:  Yes.  Thank you, Your Honor.
13        Your Honor, first to address Defense Counsel's
14   allegation that there is a backstory behind what happened
15   here, there is no backstory that can justify the details of
16   the offense charged in this indictment.  And furthermore,
17   whether Defendant Lubna was subordinate or not is debatable.
18   What is indisputable is that she was integral to the success
19   and execution of this kidnapping.
20        And the reference to a bail package, it's not here,
21   it's not now, so I would respectfully submit, Your Honor,
22   that that's not something to be considered before Your
23   Honor's determination today.  And other possibilities of
24   conditions such as home confinement, I would point out on the
25   Pretrial Services report that when asked where she lives, she

1   did not provide an address and said she couldn't, but that it
2   was somewhere in Queens.
3           So if this defendant were to be confined somewhere,
4   it's unclear where that would even be.  Thank you, Your
5   Honor.
6           THE COURT:  All right.  Thank you.
7           MR. BIALE:  Your Honor, if I may just very briefly?
8           THE COURT:  Uh-huh.
9           MR. BIALE:  I think with respect to the address,
10  there may have been a misunderstanding in the interview.  Ms.
11  Lubna did provide her address to counsel.  I think that there
12  may have been something lost in translation, but she has been
13  living at the same residence for some time and can return
14  there and will be providing that address to Pretrial Services
15  should she be released.
16          THE COURT:  All right.  Well, thank you, Mr. Biale.
17  And let me just start by addressing the very first point that
18  you made with respect to the Bail Reform Act and the need for
19  a showing before a detention hearing is even raised.  In this
20  case, I think the Government has more than shown that she was
21  a very, very serious risk of flight.  She has absolutely no
22  ties to this country except her student visa, according to
23  the Pretrial report.  She moved here in 2022.  She is a
24  citizen of Bangladesh.  Her parents reside in Bangladesh and
25  she maintains frequent contact with them.  Her only point of

1  contact here appears, at least from what I'm reading in the
2  Pretrial report, appears to be her contact with her fiance
3  who obviously is the co-defendant in this case.
4          He, according to Pretrial, financially supports
5  her, takes care of the rent and other bills, and pays for her
6  schooling.  If he is incarcerated, which he was just detained
7  probably about an hour ago, I'm not clear who is going to
8  support her, care for her, and even pay for her schooling
9  considering that, according to her own statement, she has not
10 been employed except perhaps periodically working with her
11 finance at his grocery store.
12         So there's no ties to this country that I can see.
13 No residence, no employment, and she has very significant
14 ties to Bangladesh, and a lot of reasons to flee.  So I find
15 that she is a very serious risk of flight.  And I don't think
16 that you've offered a specific enough package at this point
17 to overcome that concern about her being a flight risk.
18 You've said you have someone who is putting together a bail
19 package and may even be able to put up some cash.  But for me
20 to release her on any bail package whatsoever, I need to know
21 all of the suretors, who they are, what their employment
22 statement is, what their status in this country is, what
23 their relationship to Ms. Chowdhury is.  I need to have an
24 idea as to how much we're talking about in terms of a bail
25 package.

1                Yes.  We can consider such things as home
2    detention, home confinement, GPS monitoring.  There are a
3    whole slew of other conditions that the Court could consider
4    and would consider, but you need to put together a much
5    clearer, more precise bail package.  And that being said, I
6    am not making any findings today with respect to the
7    Government's point about danger here.  It is clear from the
8    Government's proffer, and I appreciate that it is only a
9    proffer, that Ms. Lubna was not just an innocent bystander
10   who happened to be in the residence when all of this
11   occurred, but that she was in fact instrumental in luring the
12   victim, and then according to the Government, if I understood
13   correctly, at least in part took place -- took part in
14   assaulting the victim during the course of these two days in
15   which he was held by her and her fiance.
16               So all of that will factor into a consideration of
17   whether or not she poses a danger to the community.  But as I
18   said, I'm not deciding that issue today.  I'm much more
19   concerned with the risk of flight, which I find she poses, in
20   this matter, and while I do completely agree with you 100
21   percent about the concerns of care at the MDC, at this point,
22   I can't release her without some better, more formalized bail
23   package.
24               So that being said, I'm ordering her detained
25   pending trial, but obviously, you always have leave to come

1  back to the Court and make a bail application once you have
2  put together something a little bit more concrete.
3          MR. BIALE:  Your Honor, I understand.  And of
4  course, one of the challenges here is that Ms. Lubna was not
5  brought into a courthouse until right before the 2:00 time,
6  so we haven't had as much time as we normally would.  So what
7  I would ask, Your Honor, is to -- respectfully is to set this
8  down for a second call in an hour or so, 6 p.m., and we will
9  work on putting together a package by that point?
10          THE COURT:  I apologize, but I cannot do that.  You
11 can come back tomorrow.  I will be on the bench tomorrow.  We
12 can put it on for 11:00 if you think you would have enough
13 time to put together something before then.  Otherwise, we
14 can put it on for the 2:00 call, whichever works better for
15 you.
16          MR. BIALE:  Let me get back to the Court about
17 that.  I'll email Felix because I have to -- I need to
18 consult with her.  I need to decide --
19          THE COURT:  Okay.  But we need to make sure that
20 the marshals know to bring her over, so I guess we'll put a
21 475 in for 11:00 --
22          MR. BIALE:  That's fine. Sure. I appreciate that,
23 Your Honor.
24          THE COURT:  -- and if you can't do it until 2,
25 we'll just hold her.

```
 1              In the meantime, the next appearance before the
 2   district judge in this case I understand is on August 4th?  I
 3   have a request to exclude time between now and then.  Is that
 4   correct, Counsel?
 5              MS. PAK:  Yes, Your Honor.
 6              MR. BIALE:  Correct.  No objection, Your Honor.
 7              THE COURT:  All right.  So Ms. Lubna, under the
 8   Constitution and the laws of the United States, you are
 9   entitled to a speedy trial within 70 days of the filing of
10   the indictment.  That's the charge I read to you a few
11   minutes ago.  What your attorney and the Government's
12   attorney have asked me to do is to exclude or not count the
13   time from today until August 4th, which is when you will be
14   meeting with Judge Morrison, who is the district judge on
15   this case.  And during that time, the Government is going to
16   provide your attorney with evidence about the case and engage
17   in plea negotiations to see if in fact the case could be
18   resolved without the need for a trial.
19              Do you understand that?
20              THE DEFENDANT:  Yes.
21              THE COURT:  Okay.  Do you wish me to enter this
22   order of excludable delay to give your attorney time to get
23   evidence from the Government and to discuss a possible plea?
24              THE DEFENDANT:  Yes.
25              THE COURT:  Okay.
```

```
 1            MR. BIALE:  Just to clarify, Your Honor, we are
 2   agreeing to the order in order to receive discovery.  I'm
 3   not, at this point -- I don't, at this point, know whether
 4   there will be any plea negotiations given what I understand
 5   about the nature of the case.  So we're consenting on the
 6   basis of receiving discovery.
 7            THE COURT:  Oh, so you want me to take out the part
 8   here that says that you want to -- I'm sorry --
 9            MR. BIALE:  Yes, Your Honor.
10            THE COURT:  Do you want me to take that out?
11            MR. BIALE:  I would appreciate that.  Yes.
12            THE COURT:  Okay.  Pretty standard, but all right.
13            MR. BIALE:  I understand, but it's not for every
14   case.  Can I have a moment to confer with my client, Your
15   Honor?
16            THE COURT:  Yes.
17            MR. BIALE:  Your Honor, if I can just ask whether
18   the marshals will be able to keep Ms. Lubna at the courthouse
19   for any period of time now so that we can go raise this issue
20   with the district judge?
21            THE COURT:  You want to appeal?
22            MR. BIALE:  I think that we may want to take an
23   appeal just based on -- I think given her circumstances, Your
24   Honor --
25            THE COURT:  You offered absolutely no package, but
```

1    go ahead.  Obviously --
2              MR. BIALE:  Your Honor, I understand --
3              THE COURT:  -- I don't know if Judge Morrison is
4    around.  We can certainly call.
5              Felix, can you find out if she's there?  Certainly
6    the marshals will hold her until the judge is able to see
7    her.
8              Okay.  Well, you can sit around and wait and see
9    what the judge says.  All right.  So I have one more thing I
10   need to do.  I direct the prosecution to comply with this
11   obligation under Brady v. Maryland and its progeny to
12   disclose to the defense all information, whether admissible
13   or not, that is favorable to the defendant, material, either
14   to guilt or punishment known to the prosecution.  Possible
15   consequences for noncompliance may include dismissal of
16   individual charges or the entire case, exclusion of the
17   evidence, and professional discipline or court sanctions on
18   the attorneys responsible.
19             I will be entering a written order more fully
20   describing this obligation and the possible consequences of
21   failing to meet it, and I direct the prosecution to review
22   and comply with that order.  Does the prosecutor confirm that
23   you understand your obligations and will comply with them?
24             MS. PAK:  Yes, Your Honor.
25             THE COURT:  All right.  Thank you very much.

```
 1              MR. BIALE:  Thank you, Your Honor.
 2              THE COURT:  The only other thing is you might want
 3   to think about whether or not she needs any medical attention
 4   if she is detailed.
 5              MR. BIALE:  Thank you, Judge.
 6       (Proceedings adjourned at 4:42 p.m.)
 7
 8                      TRANSCRIBER'S CERTIFICATE
 9         I certify that the foregoing is a correct
10   transcript from the electronic sound recording of the
11   proceedings in the above-entitled matter.
12
13                                          July 11, 2023
14
       Courtney Montgomery
15   _____     _____
16   Courtney Montgomery                          DATE
17   Legal Transcriber
18
19
20
21
22
23
24
25
```