

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JMH:SP  
F. #2023R00389

*271 Cadman Plaza East*  
*Brooklyn, New York 11201*

July 10, 2023

By Email

The Honorable Cheryl L. Pollak  
United States Magistrate Judge  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

    Re: United States v. Abu Chowdhury and Iffat Lubna  
      Criminal Docket No. 23-278 (NRM)

Dear Judge Pollak:

  The government respectfully submits this letter seeking the pretrial detention of Abu Chowdhury and Iffat Lubna, whose initial appearances are scheduled before Your Honor later today, July 10, 2023. The defendants are charged with one count of kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1). Accordingly, and as set forth in more detail below, the defendants both pose significant dangers to the community and are risks of flight and should be detained pending trial.

I. Background

  On May 11, 2023, Chowdhury approached the Victim on a public street and threatened to kill him if the Victim did not obey his commands. Chowdhury and another male individual shoved the Victim into a minivan, where Lubna and other unindicted co-conspirators, were waiting. Over the span of two days, the defendants and others beat the Victim with rods, punched him and sodomized him, shuttling him around to various locations in Queens. The defendants also stole the Victim's personal property such as his clothing, cellphone, and wallet. In an effort to conceal their heinous acts, the defendants shoved pills in the Victim's mouth that made the Victim feel sleepy and disoriented. They further tormented the Victim by calling the Victim's father, ensuring that he could hear his son screaming for help, and demanding that the Victim's father produce $20,000 as a ransom. When the defendants were done brutalizing and tormenting the Victim, they tied him up, blindfolded him, and left him in an abandoned house. The Victim only escaped by chewing through his restraints, breaking open a window, and asking residents in the neighborhood to call 911. The Victim was transported to a hospital, where he was treated for multiple injuries over several days.

In connection with the above kidnapping, the defendants are charged by indictment with one count of kidnapping, in violation of Title 18, United States Code, Section 1201(a)(1). The defendants were arrested earlier today.

II.     Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer. Ferranti, 66 F.3d at 541; see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Ferranti, 66 F.3d at 542.

III.    The Defendants Should Be Detained

The defendants and a co-conspirator terrorized the Victim throughout two harrowing days. However, the defendants' plotting of this kidnapping began even earlier than May 11, 2023. Lubna carefully and deliberately invested time into cultivating a fake friendship with the Victim in the days leading up to the kidnapping. Once Lubna lulled the Victim into a

false sense of security as a fellow classmate, she lured him to the vicinity of a restaurant in Queens. While the Victim waited at the location, expecting to meet Lubna, Chowdhury accosted the Victim instead and forced the Victim into a minivan that swiftly pulled up in front of them. The Victim then endured hours of a brutal assault as he was driven around Queens, forced to accompany the defendants into a hotel room and an abandoned house, where the Victim was ultimately abandoned. The defendants further terrorized the Victim by stealing the Victim's possessions, including his cellphone, wallet, and debit card, and by calling the Victim's father demanding a ransom.

For the reasons described below, the defendants pose a significant danger to the community and are a flight risk if released pending trial. No combination of bail conditions will ensure the safety of the community and the defendants' appearance before the court. Thus, a permanent order of detention should be entered.

    A.    <u>Nature and Circumstances of the Crime</u>

The defendants committed a brazen kidnapping, whisking the Victim off a public street and shuttling him to various locations to beat, sodomize, and humiliate him. The defendants and unknown others took turns striking the Victim with objects and/or their hands, resulting in severe injuries such as facial fractures, hemorrhage, a broken humerus, and anal trauma. Although any kidnapping and robbery, as offenses against the person, are serious crimes, the extent of the brutalization in this case is disturbing. For example, the defendants forced the Victim to disrobe and sodomized him until he bled. The defendants put thought into hiding their heinous acts, as they sodomized the Victim in a shower, running the water to wash away the Victim's blood.

The sadistic nature and circumstances of the crime suggest that the defendants' motivations lied beyond monetary gain. Notably, when the Victim's father told the defendant that he would be unable to produce $20,000, Chowdhury did not try to negotiate the amount of the ransom or the time in which it would be received. Chowdhury did not try to call the Victim's father again nor did he ask the Victim to name someone else who could procure $20,000 for a ransom. Rather, the defendants chose to continue torturing the Victim, suggesting that their overruling motivations were to exact pain and humiliation on the Victim. The defendants also left the Victim for dead, tying him up, taping his eyes, and abandoning him in an abandoned house with no food and water. The defendants' callous manner from the beginning of the crime to the very end demonstrates the depravity and gravity of the nature and circumstances of the charged crime.

    B.    <u>History and Characteristics of Chowdhury</u>

In evaluating the appropriateness of pretrial detention, the Court should also consider a defendant's criminal history. Chowdhury has two cases pending in Queens County Criminal Court, both arising from domestic violence matters. The types of offenses that Chowdhury is charged with in those cases, Criminal Obstruction of Breathing and Criminal Contempt in the Second Degree, show that detention is appropriate. Chowdhury is accused of impeding breathing or circulation by applying pressure on his ex-wife's throat, and further accused of violating of an order of protection in favor of his ex-wife on May 29, 2023.

Chowdhury's charge of Criminal Obstruction of Breathing is violent in nature and yet another instance of an accusation that he assaulted another person. Additionally, the fact that Chowdhury is charged with violating an order of protection instructing him to stay away from another individual indicates that he has disobeyed a court's order, placing his interests above not only those of the protected person in the order, but also those of society's and the court's. Most concerning about this charge is that it alleges that Chowdhury has defied a court's lawful order.

Accordingly, Chowdhury's history and characteristics weigh heavily in favor of a finding of dangerousness and pretrial detention, and strongly suggest that they cannot and should not be trusted to adhere to any bond conditions that this Court might set.

C. <u>Seriousness of the Danger to the Community</u>

Given the seriousness of the conduct outlined above, and the danger that defendants' violent conduct presented to the community, releasing the defendants would present a serious danger to the community.

A kidnapping on a public street in the vicinity of a local restaurant at midnight would reasonably make community members fearful for their safety. The neighborhood where the abduction occurred is a tight-knit community, which the defendants exploited in threatening the Victim, warning him that they can find easily find him if he cooperates with law enforcement.

In attempting to recover surveillance video footage of the kidnapping, law enforcement officers also canvassed small businesses in the vicinity where the Victim was abducted. While the owners of the businesses were accommodating of law enforcement's requests, these individuals, who often work late into vulnerable hours of the night, are entitled to work in places where they need not fear for their lives or safety.

In addition, the Court may and should consider Chowdhury's other acts of violence in assessing this factor. See <u>United States v. Choudhry</u>, 941 F. Supp. 2d 347, 359 (E.D.N.Y. 2013) ("[T]he Court may consider uncharged conduct in assessing the degree of danger posed by a defendant's release."). As described above, Chowdhury was arrested on two separate dates and has two pending cases in Queens County Criminal Court with serious charges alleging crimes against another person. The defendants' violent conduct, whether pertaining to past acts of violence or those of the May 11, 2023 kidnapping, clearly shows that releasing them would pose a serious danger to the public.

D. <u>Risk of Flight</u>

Based on the severity of the potential sentence—up to life imprisonment—as well as the past interactions they have had with law enforcement, the defendants will not abide by the law and will flee if given the opportunity, even if doing so places their lives and the lives of others and their livelihoods at risk.

The Second Circuit has held that the possibility of a severe sentence—including a sentence less than the one the defendants face—can establish flight risk. See <u>United States v. Scali</u>, 738 F. App'x 32, 33 (2d Cir. 2018) ("The court reasonably determined that [the

4

defendant]'s Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.").

The defendants face significant prison terms if convicted. "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." United States v. Edwards, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021). The government estimates that the defendants' Guidelines range for the conduct described above is life imprisonment—a significant sentence, accounting for factors such as a ransom demanded (United States Sentencing Guidelines § 2A4.1(b)(1)), serious bodily injury (U.S.S.G. § 2A4.1(b)(2)(B)), and sexual exploitation of the Victim, reflecting the gravity of the charge and the underlying facts in this matter.

Additionally, the defendants' prior interactions with law enforcement illustrate that they will seek to evade lawful orders such as any bond conditions. On May 29, 2023, when New York City Police Department officers (NYPD) arrested Chowdhury in Queens for violating the above-described order of protection, Chowdhury handed two of his cellphones to Lubna before being detained, so that his cellphones would not be seized by the NYPD. At the time of his arrest, Chowdhury held his cellphones in his hand and asked an NYPD officer if he could give his phones to his fiancée. The NYPD officer replied that he would hold onto Chowdhury's cellphones for him. As the officer reached for Chowdhury's cellphones, Chowdhury pulled the phones away so that they were out of the officer's reach and insisted that he would hand them to his fiancée, rather than to NYPD. The officer responded that Chowdhury could give him the cellphones and that the officer would then hand them to Lubna. The officer again reached for the cellphones and Chowdhury kept his arm outstretched so that the officer could not reach the cellphones. Chowdhury then called for Lubna, who came to Chowdhury's side, and handed her the cellphones. This interaction was captured on the officer's body-worn camera. Chowdhury was unwilling to compromise with the officer and would not acquiesce to any arrangement regarding his cellphones other than his own. Chowdhury's unwillingness to follow basic rules when his cellphones were the subject of negotiation strongly suggest that he will be unwilling to abide by any rules or conditions when his liberty is at stake.

A second relatively low stakes encounter with law enforcement further shows that both defendants will not abide by the law and would take advantage of any opportunity to flee. On May 31, 2023, NYPD officers, pulled over an SUV that Chowdhury was driving, with Lubna in the front passenger seat, because Chowdhury had failed to stop at a stop sign. When the detectives asked Chowdhury for a driver's license and registration documents, Chowdhury stated that he did not have either document but that he knew a Captain in the NYPD, whom he offered to call. When officers learned that Chowdhury's license had been suspended, and that the license plate was not registered, they ordered Chowdhury to exit the vehicle and placed him under arrest. Officers seized a cellphone Chowdhury had on his person incident to his arrest. At that time, Lubna exited from the front passenger seat holding two cellphones, one that she identified as hers, and a second cellphone that she indicated belonged to Chowdhury. Initially, Lubna handed Chowdhury's second cellphone to the NYPD so that it would be inventoried with the rest of Chowdhury's personal property during arrest processing. Upon seeing Lubna hand

5

Chowdhury's second cellphone to the police, Chowdhury began speaking in another language to Lubna. Lubna then began to demand that the police return Chowdhury's second phone to her.

Thus, Chowdhury attempted in multiple ways to conceal his identity, and Lubna was a willing participant in helping him do so. For example, Chowdhury tried to tell officers that he knew an NYPD Captain who could vouch for him instead of providing his driver's license, as requested. When the officers declined to ask for the name of the Captain, Chowdhury provided an expired learner's permit. Ultimately, Chowdhury was unable to provide any valid identification to the officers. Additionally, the license plate affixed to the white BMW SUV was not registered to any vehicle, making the vehicle untraceable to law enforcement.

Lubna was present for this entire interaction and was also present on May 29, 2023 when Chowdhury was under arrest for violating an order of protection. Lubna was no mere bystander but an active abettor in Chowdhury's attempts to thwart law enforcement and to exert some control over his arrests.

The May 29 and May 31 incidents with NYPD demonstrate that the defendants will disobey law enforcement, play by their own rules, and attempt to evade accountability by trying to hide their property and/or identity. In this case, where the stakes are much higher, with the defendants facing potential pretrial detention and life sentences, the defendants will likely not abide by the law. The defendants will flee if given the opportunity, even if doing so places other people's livelihoods, such as any potential suretors, at risk.

E.   Strength of the Evidence

The evidence against the defendants is strong and compelling. The government intends to prove the defendants' guilt at trial using, among other things, video and photographic evidence capturing and relating to their criminal conduct, electronic communications evidence, historic location data and witness testimony.

For example, surveillance video footage from the location where the Victim was forced into the minivan and from the hotel will corroborate the Victim's testimony and establish that the defendants perpetrated this crime. Surveillance video footage from cameras near the abduction location show Chowdhury approaching the Victim, a minivan pulling up in front of them shortly, and Chowdhury pushing the Victim into the minivan. Surveillance video footage from a hotel, where the defendants took the Victim into a room to further beat and sodomize him, also depicts the defendants at the check in desk. Additional surveillance video footage from an elevator inside the hotel also shows the defendants taking the elevator with the Victim that day.

Additionally, cell site data from one of Chowdhury's seized cellphones shows that it was present at various locations consistent with locations that were central to the kidnapping.

IV.	Conclusion

   For the reasons set forth above, including the brutal and heinous assault by the defendants, the callous and wanton disregard for another individual's safety, and the terror that they inflicted, the government respectfully requests that defendants be detained pending trial.

               Respectfully submitted,

               BREON PEACE
               United States Attorney

            By: /s/ Stephanie Pak
               Stephanie Pak
               Assistant U.S. Attorney
               (718) 254-6064

cc: Clerk of Court (CLP) (By Email)
   Counsel of Record (By Email)