

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

JMH:SP
F. #2023R00389

July 11, 2023

By Email

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Iffat Lubna
              Criminal Docket No. 23-278 (NRM)

Dear Judge Pollak:

      The government respectfully submits this supplemental letter in further support of its motion for the pretrial detention of Iffat Lubna, whose initial appearance took place before Your Honor yesterday, July 10, 2023. As set forth in more detail below, the defendant's proposed bail package is insufficient to ensure her return to court and the community's safety.

I.     Procedural History

      As discussed before Your Honor yesterday and in the government's detention memorandum, the defendant was an integral member of the kidnapping plot at issue in this case. As Your Honor correctly concluded, the defendant poses a significant risk of flight because she does not have ties to this country, has significant ties to Bangladesh, and is apparently completely financially dependent on her codefendant, a source of support that will not be available as her codefendant is now detained pending trial. Your Honor reserved decision on whether danger to the community would form a separate basis for detention.

      The defendant appealed, and the parties appeared before the assigned United States District Judge, the Honorable Nina R. Morrison shortly thereafter. The defendant proposed a revised bail package of $50,000 with three suretors: the codefendant's brother ("(the "Brother-in-Law"), and two nephews who are cab drivers ("Nephew A" and "Nephew B"). After argument, Judge Morrison affirmed Your Honor's order for detention based upon the defendant's risk of flight, finding that the bail package as it was presented to Your Honor was insufficient. In her determination, Judge Morrison also found Lubna to be a flight risk, pointing to Lubna's lack of ties to the community. Judge Morrison indicated that counsel for Lubna was free to present the revised bail package to Your Honor at a later time, as well as documentation

of Lubna's medical status. Judge Morrison added that if Your Honor rejected the revised bail package, that counsel could appeal for a review of that denial, and that Judge Morrison would be available to hear such an appeal as early as today.

II.     The Defendant Should Be Detained

Despite this newly proposed bail package, Lubna should still be detained. No bail package is sufficient to overcome the dangerousness of this defendant as well as the significant flight risk she poses. Lubna's role in the kidnapping cannot be minimized simply because she was not the defendant who inflicted the more sadistic attacks on the Victim. Lubna's role in luring the Victim to the abduction location was crucial to the kidnapping, and she actively took part in beating the Victim afterwards. There would be no kidnapping of this Victim, were it not for Lubna's involvement. Additionally, no bail package can account for the fact that she lacks ties to the community and to the United States and that her exact residence remains unknown. If there were an appropriate bail package to secure Lubna's future appearance and the community's safety, it would not be composed of the three proposed suretors. Thus, a permanent order of detention should be entered.

    A.     None of the Suretors Mitigate Lubna as a Flight Risk

The Brother-in-Law is not a suitable suretor. The defendants have used the Brother-in-Law's name to obscure their true identities during this kidnapping. For example, Lubna and her codefendant are depicted on video surveillance footage together at the front desk of the hotel and in the elevator with the Victim, but the invoice for the room they stayed in was billed in the name of the Brother-in-Law, and they appear to have provided a New York State driver's license bearing the Brother-in-Law's name in connection with that hotel booking. When law enforcement executed a search warrant for a location that was listed as the residence for both defendants—a residence the defendants themselves identified to the NYPD as recently as April 2023 in an unrelated matter—they found that the Brother-in-Law was the true inhabitant of the residence along with his family; there were no apparent indicia that either Lubna or her codefendant lived there. Law enforcement also showed the Brother-in-Law a photograph of Lubna, and the Brother-In-Law stated that he did not know her, and that he had never met Chowdhury's fiancé. However, the Brother-in-Law maintained to law enforcement that the codefendant did actually live there in one particular bedroom, despite appearances to the contrary, giving the government serious concerns about the Brother-in-Law's candor. The Brother-in-Law then later told law enforcement that he had met Lubna, but that she did not reside at the location. Additionally, the Brother-in-Law is unemployed, and, by his own (eventual) admission, he has no apparent connection to defendant Lubna except for her relationship to codefendant Chowdhury. Rather than demonstrating her ties to this community, the defendant's proffer of the Brother-in-Law as a suretor only highlights that she has no ties of her own to anyone or anything in the community.

Turning to Nephew A: the government does not believe that he can serve as a suretor, for reasons the government will supplement in a separate filing made under seal for the reasons set forth therein. In addition, the defendant's connection to Nephew A and the frequency of their contact is unclear based upon the record to date and the government is wholly unable to determine what, if any, moral suasion Nephew A may have upon the defendant.

Accordingly, at present the defense has presented only one potentially acceptable suretor, Nephew B. Even assuming that Nephew B is found by the Court to be a suitable suretor, Your Honor has already opined that a single suretor, based upon this record, is insufficient to secure the defendant's appearance.

B. <u>Lubna's Residence Where She Would Be Released Remains Unclear</u>

A significant barrier to have Lubna released to home confinement is that where she would be residing is unclear. Lubna was unable to provide any address to Pre-Trial Services during her interview and only stated that she lived in Queens. Counsel's position that there was a language barrier is unpersuasive because a Bengali interpreter was present for the interview. In contrast to her inability to provide Pre-Trial Services with an address, Lubna has provided her address to law enforcement in April 2023 when she and her codefendant filed a lost property report, and both listed the same address as their residence—the apparent residence of the Brother-in-Law. When law enforcement executed a search warrant yesterday morning at that same address from the lost property report, none of her belongings appeared to be at the residence, suggesting that she does not in fact reside at that location. Therefore, if Lubna were to be released to some alternative such as home detention, it is unclear where should be staying. The scarcity of information regarding Lubna's true residence—even now, 24 hours after her arrest—and the conflicting aspects of the few details that are available, make it difficult to assess how the Court or Pre-Trial Services could ever conclude that any residence for the defendant would be stable for the pendency of this case.

III. <u>Conclusion</u>

For the reasons set forth above, including those in the government's previous detention letter and the unmitigated fact that Lubna remains a flight risk, the government respectfully requests that Lubna be detained pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Stephanie Pak
Stephanie Pak
Assistant U.S. Attorney
(718) 254-6064

cc: Clerk of Court (CLP) (By Email)
Counsel of Record (By Email)