**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

    -against-

ABU CHOWDHURY, *et al.*

              Defendants.

23-CR-278 (NRM)

# MEMORANDUM OF LAW IN SUPPORT OF
# IFFAT LUBNA'S PRETRIAL MOTIONS

SHER TREMONTE LLP
Noam Biale
Neesha Chhina
90 Broad Street, 23rd Floor
New York, New York 10004
Tel: 212.202.2600
Fax: 212.202.4156
E-mail: nbiale@shertremonte.com

*Attorneys for Iffat Lubna*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .............................................................................................. ii

ARGUMENT ....................................................................................................................1

    I.      MS. LUBNA'S STATEMENTS MADE AFTER HER
          INVOCATION OF HER RIGHT TO REMAIN SILENT
          SHOULD BE SUPPRESSED ................................................................... 1

          A.     Relevant Factual Background ...................................................... 1

          B.     Legal Standard ............................................................................ 3

          C.     The Interrogation of Ms. Lubna Continued Despite
                  Her Unambiguous Invocation of Her Right to Remain
                  Silent, Violating *Miranda* ......................................................... 6

    II.     THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS ........... 10

          A.     Relevant Factual Background .................................................... 10

          B.     Legal Standard .......................................................................... 11

          C.     Particulars Are Necessary to Identify the Specific
                  Benefit that Ms. Lubna Sought to Receive from
                  Her Alleged Participation in the Kidnapping of John Doe-3
                  and to Ascertain How She Used a Cellular Telephone
                  to Further the Kidnapping ......................................................... 12

CONCLUSION ................................................................................................................ 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Smith*,
  751 F.2d 96 (2d Cir. 1984)............................................................................................. 8

*Berghuis v. Thompkins*,
  560 U.S. 370 (2010).................................................................................................... 4, 6

*Bradley v. Meachum*,
  918 F.2d 338 (2d Cir. 1990).......................................................................................... 4

*Campaneria v. Reid*,
  891 F.2d 1014 (2d Cir. 1989).................................................................................. *passim*

*Jones v. Harrington*,
  829 F.3d 1128 (9th Cir. 2016) ...................................................................................... 7

*Michigan v. Mosley*,
  423 U.S. 96 (1975)................................................................................................ 4, 5, 6, 9

*Miranda v. Arizona*,
  384 U.S. 436 (1966)................................................................................................ *passim*

*Rhode Island v. Innis*,
  446 U.S. 291 (1980)........................................................................................................ 8

*Riley v. California*,
  573 U.S. 373 (2014)...................................................................................................... 13

*Smith v. Illinois*,
  469 U.S. 91 (1984)...................................................................................................... 5, 9

*United States v. Anderson*,
  929 F.2d 96 (2d Cir. 1991)............................................................................................ 3

*United States v. Barnes*,
  158 F.3d 662 (2d Cir. 1998)........................................................................................ 12

*United States v. Bortnovsky*,
  820 F.2d 572 (2d Cir. 1987)........................................................................................ 11

*United States v. Coronado*,
  No. 12-CR-83S, 2017 WL 2930573 (W.D.N.Y. July 10, 2017) ................................... 7

*United States v. Dell'Aria*,
  811 F. Supp. 837 (E.D.N.Y. 1993) ....................................................................... 5, 8

*United States v. Garibay*,
  143 F.3d 534 (9th Cir. 1998) .................................................................................. 4

*United States v. Gonzalez*,
  764 F.3d 159 (2d Cir. 2014)..................................................................................... 5

*United States v. Griffin-Bey*,
  No. 22-CR-173 (ARR), 2022 WL 7060534 (E.D.N.Y. Oct. 12, 2022) ............................ 4, 7, 8

*United States v. Healy*,
  376 U.S. 75 (1964) ................................................................................................ 12

*United States v. Kanekar*,
  No. 17-CR-353, 2020 WL 730353 (E.D.N.Y. Feb. 12, 2020)................................... 11

*United States v. Lino*,
  No. 00-CR-632 (WHP), 2001 WL 8356 (S.D.N.Y. Jan. 2, 2001) ........................... 12

*United States v. Lopez*,
  No. CRS040375 (RLH)(RJJ), 2005 WL 8148075 (D. Nev. Mar. 9, 2005) ............... 7

*United States v. Montana*,
  958 F.2d 516 (2d Cir. 1992)..................................................................................... 8

*United States v. Newton*,
  369 F.3d 659 (2d Cir. 2004)..................................................................................... 3

*United States v. Plugh*,
  648 F.3d 118 (2d Cir. 2011)..................................................................................... 3

*United States v. Ramirez*,
  79 F.3d 298 (2d Cir. 1996)....................................................................................... 4

*United States v. Strawberry*,
  892 F. Supp. 519 (S.D.N.Y. 1995) ........................................................................ 12

*United States v. Sultanov*,
  742 F. Supp. 3d 258 (E.D.N.Y. 2024) .................................................................. 4, 6

*United States v. Torres*,
  901 F.2d 205 (2d Cir. 1990)................................................................................... 11

*United States v. Walsh*,
  194 F.3d 37 (2d Cir. 1999)....................................................................................... 12

**Constitutional Provisions**

U.S. Const. amend. V.................................................................................................. 3

**Statutes**

18 U.S.C. § 1201 ........................................................................................................ 12

**Rules**

Fed. R. Crim. P. 7 ................................................................................................... 1, 11

Iffat Lubna, by and through her undersigned attorneys, respectfully submits this Memorandum of Law in support of her pretrial motions. For the reasons set forth below, the Court should (1) suppress Ms. Lubna's statements made after her invocation of her right to remain silent, pursuant to *Miranda*; and (2) direct the government to file a bill of particulars, pursuant to Federal Rule of Criminal Procedure 7(f).

## ARGUMENT

### I.    MS. LUBNA'S STATEMENTS MADE AFTER HER INVOCATION OF HER RIGHT TO REMAIN SILENT SHOULD BE SUPPRESSED

#### A.  Relevant Factual Background

On July 10, 2023, Ms. Lubna was arrested by FBI agents pursuant to an arrest warrant. Following her arrest, Ms. Lubna was transported to 26 Federal Plaza where she was interrogated by an NYPD officer and FBI agent, while handcuffed to a railing that was bolted to the wall in the interrogation room. At the time, Ms. Lubna was twenty-three years old and approximately nine weeks pregnant. As a recent arrival to the United States from Bangladesh, she had very limited English proficiency. Accordingly, the interrogation was conducted with the assistance of a Bangla interpreter.[1] The interrogation was recorded on video, produced by the government to defense counsel in a file Bates stamped EDNY_000049. The video spans three and a half hours, with the interrogation beginning fifty-seven minutes in. Select excerpts of the video have been transcribed and translated. *See* Declaration of Noam Biale in Support of Iffat Lubna's Pretrial Motions ("Biale Decl."), Exhibit A.[2]

---

[1]    The government indicated in its discovery letter producing the interrogation video that the interpreter was also an NYPD officer; however, we have not received identification information for this individual.

[2]    In advance of the filing of this motion, counsel for Ms. Lubna shared the transcription and translation attached as Exhibit A to the Biale Declaration with the government, to permit the

1

During the interrogation, the interpreter frequently engaged in independent, side conversations with Ms. Lubna—in which he was neither interpreting questions posed by the NYPD officer or FBI agent, nor interpreting answers or statements made by Ms. Lubna. Instead, he encouraged Ms. Lubna in her native language—undetectable to the questioning officers—to cooperate with law enforcement. For example, in one of these side conversations, the interpreter instructed Ms. Lubna: "Actually, if you cooperate with us in every way, in all info, it will be good for you and it will be good for us." Biale Decl., Ex. A at 1:16:12. Later in the interrogation, after the interpreter provided a summary of information law enforcement had purportedly learned in its investigation of Ms. Lubna, Ms. Lubna responded: "I told you as far as I know"—meaning that she had shared information to the best of her knowledge. *Id*. at 1:55:15. The interpreter then proceeded to warn her: "Okay but don't lie . . . Don't tell lies like this because you will be punished for each additional lie you say. Whatever you said earlier, do not say it again." *Id*. at 1:56:25. Following this admonition, Ms. Lubna replied, "***I don't want to talk anymore***." *Id*. at 1:56:43 (emphasis added). Rather than translate Ms. Lubna's statement back to the questioning agents, the interpreter answered Ms. Lubna, "That's your wish but tell us to the extent that you know, if you don't know [inaudible]." *Id*. The interpreter subsequently continued to question Ms. Lubna about the allegations. *Id*. In response to these questions, Ms. Lubna repeated multiple times, "I don't know a lot of things," and pleaded, "I told you as far as I know, I have nothing else inside of me. You all can hit me cut me." *Id*. at 1:57:37–1:58:04. While the interpreter assured her there would be no hitting or cutting, the questioning of Ms. Lubna then continued for

---

government an opportunity to respond with any concerns and, if necessary, propose alternative language. The government did not identify any issues with the translation and confirmed that it has not created its own independent translation of the interrogation video. *See* Biale Decl. ¶¶ 5–6.

nearly an hour more, during which Ms. Lubna made statements that defense counsel expects the government intends to introduce at trial.

### B. Legal Standard

Under the Fifth Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against [her]self." U.S. Const. amend. V. To safeguard the constitutional right against self-incrimination, the Supreme Court in *Miranda v. Arizona* ruled that law enforcement may not interrogate a person who had been taken into custody without first warning the person that, among other things, she has "the right to remain silent, [and] that anything [s]he says can be used against [her] in a court of law." *United States v. Newton*, 369 F.3d 659, 668 (2d Cir. 2004) (quoting *Miranda*, 384 U.S. 436, 479 (1966)). Absent such warnings, the Supreme Court reasoned that the "process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel [her] to speak where [s]he would not otherwise do so freely." *Miranda*, 384 U.S. at 467. Accordingly, the accused "must be adequately and effectively apprised of [her] rights and the exercise of those rights must be fully honored." *Id.*

Once *Miranda* warnings are properly administered, the accused is left to make her own choice as to how to proceed—she may "knowingly and voluntarily waive those rights" and make a statement or, alternatively, "invoke those rights and thereby cut off further questioning." *United States v. Plugh*, 648 F.3d 118, 125 (2d Cir. 2011). If, at trial, the government wishes to introduce into evidence a statement made by a person during a custodial interrogation, it has the burden of establishing by a preponderance of the evidence that the person waived her *Miranda* rights and that her statement was "truly the product of free choice." *United States v. Anderson*, 929 F.2d 96, 99 (2d Cir. 1991). "There is a presumption against waiver, and the government's

burden to demonstrate a waiver is 'great' because a court will 'indulge every reasonable presumption against waiver of fundamental constitutional rights.'" *United States v. Sultanov*, 742 F. Supp. 3d 258, 305 (E.D.N.Y. 2024) (Morrison, J.) (quoting *United States v. Garibay*, 143 F.3d 534, 536–37 (9th Cir. 1998)).

"If the individual indicates in any manner, at any time prior to or during questioning, that [s]he wishes to remain silent, the interrogation *must cease*." *Miranda*, 384 U.S. at 473–74 (emphasis added); *see also Michigan v. Mosley*, 423 U.S. 96, 101 (1975); *Campaneria v. Reid*, 891 F.2d 1014, 1021 (2d Cir. 1989). Invocation of the right "must be construed liberally"—the individual need not rely on "talismanic phrases or any special combination of words." *United States v. Griffin-Bey*, No. 22-CR-173 (ARR), 2022 WL 7060534, at *5 (E.D.N.Y. Oct. 12, 2022) (quoting *Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir. 1990), and *United States v. Ramirez*, 79 F.3d 298, 304 (2d Cir. 1996)). Nevertheless, the invocation must be unambiguous and unequivocal. *Berghuis v. Thompkins*, 560 U.S. 370, 381 (2010). A simple, unambiguous statement that the person "want[s] to remain silent or that [s]he [does] not want to talk with the police" effectively invokes the "right to cut off questioning." *Id*. at 382 (internal quotation marks omitted).

Termination of the interrogation following invocation of the right to remain silent is necessary to "counteract[] the coercive pressures of the custodial setting." *Mosley*, 423 U.S. at 104; *see also Campaneria*, 891 F.2d at 1021. As the Supreme Court has recognized, "any statement taken after the person invokes [her] privilege cannot be other than the product of compulsion, subtle or otherwise." *Miranda*, 384 U.S. at 474; *see also Mosley*, 423 U.S. at 102 (rejecting interpretation of *Miranda* that would permit continuation of interrogation after a momentary cession because "repeated rounds of questioning [would] undermine the will of the

4

person being questioned"); *Smith v. Illinois*, 469 U.S. 91, 98 (1984) (absent a bright-line prohibition on questioning after clear invocation of the right to counsel, "the authorities through 'badger[ing] or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade h[er] to incriminate h[er]self notwithstanding h[er] earlier request"). The admissibility of statements obtained after the invocation thus depends on whether the "right to cut off questioning" was "scrupulously honored." *Mosley*, 423 U.S. at 104; *see also United States v. Gonzalez*, 764 F.3d 159, 165 (2d Cir. 2014). To determine whether the accused's rights have been "scrupulously honored," relevant considerations include:

> (1) whether, before the initial interrogation, the defendant was carefully advised that [s]he was under no obligation to answer any questions and could remain silent if [s]he wished and acknowledged understanding the Miranda warnings; (2) whether the authorities immediately ceased interrogation when the defendant indicated an unwillingness to speak or zealously pursued questioning after assertion of the right to silence; (3) whether there was a sufficient time interval . . . between the first and second interrogations and whether the interrogations were performed in different contexts or under different conditions, such as at different locations and by different officers; (4) whether Miranda warnings and an otherwise valid waiver preceded the second questioning session; and (5) whether the second interrogation pertained to a crime that was not the subject of the earlier interrogation.

*United States v. Dell'Aria*, 811 F. Supp. 837, 842–43 (E.D.N.Y. 1993) (internal citations and quotations omitted); *see also Mosley*, 423 U.S. at 106. Such factors are non-exhaustive, and no one factor is determinative. *Dell'Aria*, 811 F. Supp. at 843. Moreover, the central focus of the inquiry is the conduct of law enforcement authorities—not the voluntariness of any statement the individual makes following invocation. *Id.* Indeed, "an accused's *postrequest* responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith*, 469 U.S. at 100 (invocation of right to counsel); *see also Campaneria*, 891 F.2d at 1022.

5

**C.  The Interrogation of Ms. Lubna Continued Despite Her Unambiguous Invocation of Her Right to Remain Silent, Violating *Miranda***

The statements made by Ms. Lubna following her invocation of her right to remain silent should be suppressed. The law enforcement officers failed to scrupulously honor her invocation and cease questioning, in violation of *Miranda* and its progeny. Ms. Lubna was arrested, taken into custody, handcuffed, held in an interrogation room for hours during which she was not free to leave, and questioned at length by an NYPD officer, FBI agent, and the interpreter; thus, Ms. Lubna was indisputably subjected to custodial interrogation. *See, e.g.*, *Sultanov*, 742 F. Supp. 3d at 300 (reviewing elements of custodial interrogation, noting interrogation is "express questioning or its functional equivalent" and the custodial element "is clearly met when a suspect is formally arrested"). Accordingly, the safeguards of *Miranda* apply, including Ms. Lubna's right to cut off questioning. *See Mosley*, 423 U.S. at 103–04 ("Through the exercise of h[er] option to terminate questioning [s]he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting."). Ms. Lubna's statements following her invocation of her right to remain silent were obtained in violation of *Miranda*.

First, Ms. Lubna's statement, "I don't want to talk anymore," was an unambiguous and unequivocal invocation of her right to remain silent. Biale Decl., Ex. A at 1:56:43. Indeed, this statement is nearly identical to the "simple unambiguous statement" that the Supreme Court held to be a sufficient invocation in *Berghuis*. 560 U.S. at 382 (holding that if defendant had said "he did not want to talk with the police" he would have invoked his right to cut off questioning); *see also Campaneria*, 891 F.2d at 1017, 1021 ("Nothing was ambiguous or equivocal about [defendant's] statement"—"I don't want to talk to you now, maybe come back later"—which

6

"straightforwardly" invoked his right to remain silent); *United States v. Lopez*, No. CRS040375 (RLH)(RJJ), 2005 WL 8148075, at *3 (D. Nev. Mar. 9, 2005), *report and recommendation adopted*, 2005 WL 8148111 (D. Nev. Apr. 4, 2005) ("When [defendant] stated, through the interpreter, that 'he doesn't want to speak anymore,' he was invoking his right to remain silent."). There is no plausible alternative meaning for Ms. Lubna's statement—in saying she did not want to talk anymore, she could only have meant she no longer wanted to speak with law enforcement. *See Jones v. Harrington*, 829 F.3d 1128, 1139–40 (9th Cir. 2016) (holding defendant's "request to remain silent was unambiguous on its face" where defendant stated, "I don't want to talk no more" and thus, "in other words, *he did not want to talk anymore*."); *see also United States v. Coronado*, No. 12-CR-83S, 2017 WL 2930573, at *17 (W.D.N.Y. July 10, 2017) ("To be unambiguous, an invocation does not need to be a talismanic phrase such as 'I invoke my right to silence under the Fifth Amendment,' but it must be an unequivocal expression that the defendant does not wish to talk with law enforcement. Ambiguity means 'admitting more than one interpretation or reference' or 'having a double meaning or reference.'").

Although Ms. Lubna's invocation was unambiguous on its face, the context of interrogation surrounding her invocation further supports the finding that her statement was an assertion of her right to remain silent. *See Griffin-Bey*, 2022 WL 7060534, at *5 (holding defendant's assertion—"I don't have anything to say"—"explicitly informed the detectives that he did not wish to speak" and invoked his right to remain silent, particularly "in light of the entire context of the interrogation"). Ms. Lubna's invocation came immediately after the interpreter warned her of the consequences of lying to law enforcement. *See* Biale Decl., Ex. A at 1:56:25 ("Okay but don't lie . . . Don't tell lies like this because you will be punished for each additional lie you say."). When confronted with this prospect of additional punishment, Ms.

7

Lubna stated that she did not want to talk anymore, making clear that she was invoking her right to cut off questioning. *Id*. at 1:56:43.

Because Ms. Lubna unambiguously invoked her *Miranda* rights, the Court should next consider whether the interrogating officers "scrupulously honored" Ms. Lubna's right to remain silent. *Dell'Aria*, 811 F. Supp. at 844. They did not. After Ms. Lubna's explicit assertion that she did not want to speak, the interrogation should have ceased immediately. *See Griffin-Bey*, 2022 WL 7060534, at *5. Instead, the interpreter's response was to encourage Ms. Lubna to share information "to the extent that [she] kn[e]w." Biale Decl., Ex. A at 1:56:43. This response is, on its own, sufficient to constitute an improper interrogation in violation of *Miranda*. "Interrogation includes both express questioning as well as 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *United States v. Montana*, 958 F.2d 516, 518 (2d Cir. 1992) (holding agent's statement to defendant that "cooperation would inure to his benefit" was interrogation in violation of the defendant's right to cease questioning) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980)).

The Second Circuit's decision in *Campaneria v. Reid* is instructive. There, after the defendant stated he did not want to talk, the officer responded, "If you want to talk to us, now is the time to do it." 891 F.2d at 1021. The Second Circuit held that this remark was aimed at "changing [the defendant's] mind" and was "precisely the sort of conduct the prophylactic rule seeks to prevent." *Id*. So too here. The invocation of the right to remain silent is not an invitation to negotiate a waiver. *See, e.g.*, *Anderson v. Smith*, 751 F.2d 96, 105 (2d Cir. 1984) ("The interrogator never needs to know why a suspect wants to remain silent; once it is clear that the suspect wants to remain silent, the interrogation should cease."). The interpreter's remark to Ms.

8

Lubna following her invocation thus violated Ms. Lubna's right to remain silent. That Ms. Lubna proceeded to respond is irrelevant to the analysis, as "statements made in response to questions after a suspect has invoked [her] right to remain silent cannot be used to raise doubts about [her] initial invocation." *Campaneria*, 891 F.2d at 1022 (citing *Smith*, 469 U.S. at 96–97).

Beyond the initial remark, the interpreter then proceeded to question Ms. Lubna about the allegations without pause, continued to show her evidence, instructed her to "try to refresh [her] memory," and asked her to provide her best recollection of events relating to the alleged kidnapping. Biale Decl., Ex. A at 1:56:55–2:01:10. The other law enforcement officers also continued to question Ms. Lubna about the allegations, including but not limited to having Ms. Lubna review video footage to identify individuals appearing in the video. *Id*. at 2:01:50–2:02:30. There was no time interval between the questioning, and no fresh *Miranda* warnings were issued. These questions concerned the very subject on which Ms. Lubna invoked her rights and were clearly intended to illicit an incriminating response. Under such circumstances, it is evident that the officers did not even attempt to "fully respect[]" Ms. Lubna's invocation. *Mosley*, 423 U.S. at 104–06 (defendant's invocation "fully respected" where police "immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation"). To the contrary, her request to cut off questioning was ignored entirely, in an effort to "wear down [her] resistance and make [her] change [her] mind." *Id*. at 106. Any statement made by Ms. Lubna after her invocation thus cannot be understood as the product of her own free will. *See Miranda*, 384 U.S. at 474 ("Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once

9

invoked."). Accordingly, to remedy this blatant and brazen violation of the rights guaranteed to Ms. Lubna under the Fifth Amendment and safeguarded by *Miranda*, the Court should suppress any statement made by Ms. Lubna after her invocation.

## II.    THE GOVERNMENT MUST PROVIDE A BILL OF PARTICULARS

### A.  Relevant Factual Background

Ms. Lubna is charged with participation in two distinct kidnapping conspiracies. ECF No. 200 (the "S2 Indictment") ¶¶ 4–9. The S2 Indictment tracks the statutory language of the charges to allege that Ms. Lubna and others kidnapped two victims, John Doe-2 and John Doe-3, "for ransom and reward and otherwise." *Id.* ¶¶ 4, 6, 7, 9. The S2 Indictment further alleges that, in furtherance of the commission of these kidnappings, Ms. Lubna and others used "cellular telephones and the internet." *Id.* Although the S2 Indictment contains allegations relating to a purported ransom call between one of Ms. Lubna's codefendants and John Doe-2's father, there are no allegations relating to the particular ransom, reward, or other benefit sought in connection with the kidnapping of John Doe-3. The Rule 16 discovery is similarly opaque. The discovery produced by the government does nothing to help identify the ransom, reward, or other benefit relevant to the alleged kidnapping of John Doe-3, as is necessary for Ms. Lubna to prepare her defense. Similarly, the S2 Indictment includes specific allegations regarding the defendants' use of cellular telephones in furtherance of the kidnapping of John Doe-2, *id.* ¶ 5, but offers only a general allegation that Ms. Lubna and others "communicated with one another using cellular telephones regarding the kidnapping and assault of John Doe-3." *Id.* ¶ 8.

On July 21, 2023 and again on April 28, 2025, counsel for Ms. Lubna requested that the government provide certain particulars regarding the alleged kidnappings. ECF Nos. 28, 265. Among other things, counsel requested particulars regarding:

10

- "The specific benefit that the government contends Ms. Lubna sought to receive . . . from her participation in the kidnapping alleged in Paragraph 9 of the [S2 Indictment]." ECF No. 265 at 2.

- "The time, place and manner of any communications made via a cell phone or the internet in furtherance of the alleged kidnapping charged in Paragraphs 7 through 9 of the [S2 Indictment], including information about specific methods used (*i.e.*, messaging applications, video or audio calling services)." *Id.*

In its April 28, 2025 letter, counsel for Ms. Lubna requested that the government provide the specified information on or before May 2 or, if it would not provide the information sought, to state the grounds for not doing so. *Id.* at 1. Despite multiple efforts at contacting the government to obtain a response to these requests, no response has been received.

### B.  Legal Standard

Federal Rule of Criminal Procedure 7(f) grants the court discretion to direct the government to file a bill of particulars. The government must provide a defendant with a bill of particulars where "the details of the charge against [her] . . . [are] necessary to the preparation of [her] defense, and to avoid prejudicial surprise at the trial." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (quoting 1 C. Wright, Federal Practice and Procedure § 129, at 434–35 (2d ed. 1982)); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) ("Rule 7(f) . . . permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against [her], thereby enabling [the] defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should [s]he be prosecuted a second time for the same offense."); *United States v. Kanekar*, No. 17-CR-353, 2020 WL 730353, at *6 (E.D.N.Y. Feb. 12, 2020) ("A bill of particulars is required if an indictment lacks sufficient detail to allow a defendant to 'prepare for trial' or 'prevent surprise.'"). In assessing whether to exercise their discretion to order a bill of particulars, courts

11

consider "whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself." *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995). Where the information sought is necessary, a bill of particulars is required "even if the effect is disclosure of the Government's evidence or theories." *United States v. Lino*, No. 00-CR-632 (WHP), 2001 WL 8356, at *3 (S.D.N.Y. Jan. 2, 2001) (citing *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998)).

**C. Particulars Are Necessary to Identify the Specific Benefit that Ms. Lubna Sought to Receive from Her Alleged Participation in the Kidnapping of John Doe-3 and to Ascertain How She Used a Cellular Telephone to Further the Kidnapping**

The S2 Indictment fails to provide Ms. Lubna with adequate information to understand the nature of the substantive kidnapping and conspiracy to kidnap charges alleged in connection with John Doe-3 (Counts 5 and 6). S2 Indictment ¶¶ 7–9. Instead, the charges in the Indictment are "so general that they do not advise [Ms. Lubna] of the specific acts of which [s]he is accused." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). Ms. Lubna is only advised that she allegedly participated in a kidnapping "for ransom and reward and otherwise" and that she communicated with others regarding the kidnapping "using cellular telephones." S2 Indictment ¶¶ 7–9. Both the purpose of obtaining a benefit and the use of an instrumentality of interstate commerce in the furtherance of the crime are required elements of the alleged kidnapping offenses. *See* 18 U.S.C. § 1201.

Because *pecuniary* gain to the defendant is not an essential element of a kidnapping offense, *United States v. Healy*, 376 U.S. 75, 81 (1964), the inclusion of "and otherwise" in the S2 Indictment encompasses an extremely wide array of potential benefits which Ms. Lubna could have sought to obtain from the purported kidnapping of John Doe-3. The government

offers no information regarding what benefit Ms. Lubna sought from the alleged offense. Without such information, Ms. Lubna cannot understand the contours of the government's argument, and she should not be made to guess.

Nor should Ms. Lubna be forced to make assumptions about which instances of her "use of a cellular telephone" from May 2023 through January 2024—an eight-month period—are considered by the government to be "in furtherance of" the alleged kidnapping of John Doe-3. S2 Indictment ¶ 7. As the Supreme Court observed, "the term 'cell phone' is . . . misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone. They could just as easily be called cameras, video players, rolodexes, calendars, tape recorders, libraries, diaries, albums, televisions, maps, or newspapers." *Riley v. California*, 573 U.S. 373, 393 (2014). Thus, to allege that Ms. Lubna and others "communicated with one another using cellular telephones" offers little insight into the nature of these communications, platform on which they occurred, scope and purpose of the communications, or how the communications were used "in furtherance of" the scheme. Without knowing the particularized information about the communications that the government contends were used to further the scheme, Ms. Lubna is significantly hindered in preparing a defense to these charges.

Accordingly, we respectfully request that the Court direct the government to file a bill of particulars providing Ms. Lubna with (i) the specific benefit Ms. Lubna sought to receive from her participation in the kidnapping alleged in Counts 5 and 6, and (ii) the time, place and manner of any communications made via a cell phone or the internet in furtherance of the alleged kidnapping charged in Counts 5 and 6. Absent this information, Ms. Lubna will be hindered in preparing her defense and will likely face unfair surprise at trial.

13

## **CONCLUSION**

For the foregoing reasons, we respectfully request that the Court suppress Ms. Lubna's

statements made after her invocation and direct the government to file a bill of particulars.


Dated: May 30, 2025
         New York, NY

                                        SHER TREMONTE LLP

                                        By: */s/ Noam Biale*
                                              Noam Biale
                                              Neesha Chhina
                                         90 Broad Street, 23rd Floor
                                         New York, New York 10004
                                         Tel: 212.202.2600
                                         Fax: 212.202.4156
                                         E-mail: nbiale@shertremonte.com

                                         *Attorneys for Iffat Lubna*


14