# SHER TREMONTE LLP

March 28, 2026

**BY ECF**

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *United States v. Abu Chowdhury, et al.,* **23-cr-278 (NRM)**

Dear Judge Morrison:

We represent Iffat Lubna in the above-referenced matter. We write in response to the government's letter regarding its *Brady* and *Giglio* obligations, filed yesterday, as to its witness Mazharul Islam. ECF No. 485.

First, the government's letter presents a cramped and erroneous view of its constitutional obligations. To protect a defendant's right to due process, the government must disclose favorable evidence within its possession *or knowledge. See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) ("The *Brady* obligation extends only to material evidence . . . that is known to the prosecutor."). The "prosecutor is presumed to have knowledge of all information gathered in connection with his office's investigation of the case and indeed 'has a duty to learn of any favorable evidence known to [ ] others acting on the government's behalf in the case, including the police.'" *Id.* (alteration in original) (quoting *Kyles v. Whitley*, 514 U.S. 419, 437–38 (1995)). "The [g]overnment cannot avoid its *Brady* obligations by being willfully blind to the information in front of it." *United States v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D.N.Y. 2013). Here, the government knew, at a minimum, that (a) Mr. Islam had two federal criminal cases in which his role as a victim-witness in this case was asserted to be relevant to the sentencing proceeds, *see United States v. Islam*, No. 24-CR-100 (N.D. Ohio), ECF No. 31; *United States v. Islam*, No. 25-CR-425 (S.D.N.Y.), ECF No. 30[1]; (b) Mr. Islam had filed (or was in the process of filing) an application for a T-visa, represented by counsel to whom he had been introduced by an FBI victims' services officer, Trial Tr. 912:5–913:4; and (c) Mr. Islam had told the prosecution team about his criminal conduct, including "explain[ing] to the Government how the scheme worked." Trial Tr. 898:13-14. Irrespective of whether defense counsel could have obtained some of this material independently (which would apply only to the

---

[1]    The government admitted for the first time in court on the day of Mr. Islam's cross-examination that it had engaged in discussions about Mr. Islam with the prosecutor in the Southern District of New York handling his case. Trial Tr. 822:17–823:5.

90 Broad Street | 23rd Floor | New York, NY 10004

www.shertremonte.com | tel. 212.202.2600 | fax. 212.202.4156

The Honorable Nina R. Morrison
March 28, 2026
Page 2 of 4

first category[2]), that does not relieve the government of its own obligations under *Brady* and *Giglio*.

Second, the government's claim that defense counsel did not request these materials is simply untrue. As early as July 21, 2023, the defense sent the government a discovery request, which included a demand for all *Brady* and *Giglio* material "that is within the possession, custody or control of the government, known by the government, or could, *by the exercise of due diligence, become known to the government*." ECF No. 28, at 2 (emphasis added). In particular, we requested, as to Mr. Islam "[a]ny information regarding [Islam]'s criminal background, including arrest history," "[a]ny information concerning [Islam]'s involvement in money laundering, whether charged or uncharged," and "[a]ny information regarding any agreements made between the government or its agents and [Islam] offering lack of prosecution, or arrest, leniency in any court, immigration status or visas, or any other favorable treatment or consideration for the efforts made in connection with any aspect of this case." *Id.* at 3. The government filed a responsive letter on August 4, 2023, simply stating it was unaware of any *Brady* material and would comply with its obligations, including to provide *Giglio* material "[b]efore the hearing." ECF No. 35, at 3. The defense sent the government a follow-up discovery request on April 28, 2025, reiterating its demand for *Brady* and *Giglio* material, and specifically requesting "[a]ny additional evidence in the government's possession regarding investigation into fraudulent conduct by [Islam]." ECF No. 265, at 2. The government never responded to this aspect of the defense's second discovery request.[3]

Then, on December 17, 2025, the defense requested certified copies of the A-Files for Mr. Islam and the other alleged victim in this case. As the Court knows, the government initially refused to provide or even seek to obtain these materials, and the defense was forced to file a motion to compel their production. *See* ECF No. 396. In response, the government stated on January 12, 2026 that it had "begun the process to obtain the A files,"

---

[2]    The defense requested yesterday, on an expedited basis, a copy of the transcript of Mr. Islam's sentencing transcript in the Northern District of Ohio. We have yet to receive the transcript and will follow up with the court reporter's office there first thing Monday morning. The government also has not provided the PSR in that case—which the defense would not be able to obtain—which, according to the documents the government provided early in the morning yesterday, applies an obstruction of justice enhancement. That conclusion and the factual circumstances supporting it could be highly relevant to Mr. Islam's credibility.

[3]    The April 28, 2025 request also contained a demand for a bill of particulars, which, because of the government's lack of response, was ultimately briefed before the Court and the government responded to that request in its opposition papers, ECF No. 303, and at oral argument on the pretrial motions.

The Honorable Nina R. Morrison
March 28, 2026
Page 3 of 4

ECF No. 398, at 1, and the defense received portions of the files on February 10, 2026 (the T-visa application was not disclosed until February 25, however).

Finally, on March 2, 2026, we emailed the government stating, "Regarding John Doe-2's criminal history, . . . we've noticed there are no notes or 302s in the 3500 material regarding his prior convictions.  Are we to infer from that that he never told you about them and you learned of them independently?"  Email chain between N. Biale and J. Tannen, attached hereto as **Exhibit A**.  The government did not respond directly to this question in its reply email.  *Id.*  We then reiterated:

> Is it your representation that the only information in the possession of the government about Mr. Islam's criminal history is the existence of the N.D. Ohio and SDNY cases and this Town of Warwick complaint?  If that's the case, so be it (though seems unlikely).  If you know more, then our position would be that you have not made full disclosure.

*Id.*  The government replied, "we have no additional discovery, aside from what's publicly available on PACER, about John Doe-2's prior convictions other than the [Town of Warick] complaint we produced today."  *Id.*

Unsurprisingly, however, when Mr. Islam testified yesterday, he stated that he had provided the government with more fulsome information in his proffer sessions, including "explain[ing] to the Government how the scheme worked."  Trial Tr. 898:13-14.  The government did not memorialize any of that information in notes or 302s, and thus the defense did not learn about it until Mr. Islam was on the stand during cross-examination.  *See* Trial Tr. 759:6-7 (describing single note in § 3500 material regarding Islam's criminal history).

The government's selective notetaking practices in this case appear to be consistent with what the undersigned has experienced in other cases in this District.  *See United States v. Kaplan*, No. 23-cr-293 (JMW), ECF No. 381; *United States v. Campbell*, No. 18-cr-468 (LDH), ECF No. 80. While the government is correct that it is not obligated under the Constitution or the Jencks Act to take notes of meetings with witnesses, *see* Trial Tr. 641-42, courts have emphatically called the failure to do so in order to avoid disclosing favorable statements to the defense to be "quite inconsistent with the obligations of a law enforcement officer representing the United States Government," and amounting to "[p]laying games with evidence."  *United States v. Bernard*, 625 F.2d 854, 859 (9th Cir. 1980).  It also contravenes Department of Justice policy.  *See* Justice Manual § 9-5.002 ("Although not required by law, generally speaking, witness interviews should be memorialized by the agent. . . .  Material variances in a witness's statements should be memorialized[.]").  Further, a failure to take notes does not relieve the government of its "obligation to inform the accused of information that materially impeaches its witness."

The Honorable Nina R. Morrison
March 28, 2026
Page 4 of 4

*United States v. Rodriguez*, 496 F.3d 221, 225 (2d Cir. 2007). "This obligation is designed to serve the objectives of both fairness and accuracy in criminal prosecutions." *Id.*

To be clear, we do not believe, nor do we intend to suggest, that the prosecutors in this case have maliciously suppressed favorable evidence by failing to record it in their notes. Rather, the approach taken in this case (and the others referenced above) follows a policy on notetaking by this U.S. Attorney's Office that unfairly and improperly requires line prosecutors to honor their *Brady* and *Giglio* obligations "more . . . in the breach than the observance." W. Shakespeare, *Hamlet*, Act 1, Scene 4. The Court should exercise its authority under Federal Rule of Criminal Procedure 5(f) and its inherent authority to enforce its own orders to correct this erroneous approach.

Respectfully submitted,

*/s/Noam Biale*
Noam Biale
Katie Renzler
SHER TREMONTE LLP

*Attorneys for Iffat Lubna*

cc:     All counsel (by ECF)